# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:14-cv-163-FDW

| | |
|---|---|
| JOSE MARTINEZ LOPEZ, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| FRANK L. PERRY, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on an initial review of Plaintiff's pro se complaint that was filed pursuant to 42 U.S.C. § 1983. (Doc. No. 1).

## I.    BACKGROUND

According to the website of the North Carolina Department of Public Safety (DPS), Plaintiff is a prisoner detained in the Avery/Mitchell Correctional Institution within this district. On April 4, 2014, Plaintiff was convicted of cruelty to animals (principal) in Stokes County and his projected release date is July 9, 2014.

In his complaint, Plaintiff contends that the DPS practice of honoring an "ICE Federal request" to detain a prisoner for 48 hours following his projected release date violates Plaintiff's constitutional rights. Plaintiff appears to argue that one or more of the defendants have agreed to detain him for 48-hours and they are state actors within the meaning of § 1983. In his claim for relief, Plaintiff seeks an injunction against the defendants which would compel them "to stop denying plaintiff his rights by placing 'bogus ICE Immigration Detainers'" in his personal file because this practice has denied him institutional privileges and may result in him being detained at least 48 hours after he has completed his state sentence. (1:14-cv-163: Complaint at 4).

1

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(A)(a), "The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Following this initial review the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). In conducting this review, the Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under Federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION

Plaintiff is a prisoner of the State of North Carolina and as such his pro se § 1983 complaint must satisfy the mandatory requirements of the Prisoner Litigation Reform Act ("PLRA"), which provides that a prisoner must exhaust his administrative remedies prior to the commencement of a civil action under § 1983. The PLRA provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life and the Court noted that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citing Booth v.

Churner, 532 U.S. 731, 739 (2001)). The Porter Court went on to stress that the exhaustion requirement must be met before commencement of the suit. Id. Whether an inmate has properly exhausted his administrative remedies is a matter to be determined by referencing the law of the state where the prisoner is housed and where the allegations supporting the complaint arose. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005). Indeed, failure to exhaust administrative remedies is an affirmative defense, but the Court is not prohibited from sua sponte examining the issue of exhaustion in reviewing the complaint. As the Fourth Circuit observed:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Anderson, 407 F.3d at 683.

In North Carolina, State prisoners must complete a three-step administrative remedy procedure in order to exhaust their administrative remedies. See N.C. Gen. Stat. §§ 148-118.1 to 148-118.9 (Article 11A: Corrections Administrative Remedy Procedure); Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). According to the record before the Court, it appears that Plaintiff began his participation in the administrative remedy procedure by filing a grievance in May 2014, to which prison officials responded by noting that there had been an federal immigration detainer placed on him in May after Immigration officials interviewed Plaintiff in April 2014. The response

3

at Step One of the grievance procedure indicated that contact information for immigration would be provided to Plaintiff. (Id., Doc. No. 1-4). In response to his Step Two appeal, the administrator noted that Plaintiff's detainer was filed on May 1, 2014, and that as result of the detainer he would not be eligible for placement in minimum custody. No further action was recommended and it was noted that Plaintiff appealed the Step Two determination to Step Three on a form dated June 12, 2014. (Id.). Plaintiff's complaint was apparently signed on June 20, 2014, and filed by the Clerk in this district on June 27, 2014. (Id., Doc. No. 1 at 5).

Plaintiff attaches copies of the recommendation of dismissal of his grievance at Step One and Step Two but fails to include a copy of the result of his Step Three appeal. Based on the date of his Step Two grievance which was dated June 12, 2014, and the date of his complaint, which would have been mailed at the earliest on June 20th, it would appear that in his haste to file his federal complaint, Plaintiff declined to await the written response at Step Three. Further, Plaintiff leaves blank the space on his complaint which is designed to provide information on whether he fully exhausted his administrative remedies before filing the complaint. However, the Court cannot find on this present record that he did not in fact receive a response or exhaust his administrative remedies prior to filing his complaint. The Court will therefore examine the merits of his complaint as required by this initial review.

Even assuming that Plaintiff had exhausted his administrative remedies prior to filing suit, his challenge to his custody classification would fail on the merits. First, he is scheduled to be released from State custody on July 9, 2014, and the defendants would have a right to be heard on the propriety of issuing an injunction, and he would presumably be released, from State custody in any event, before any such hearing could be scheduled. Moreover, an injunction changing his status to minimum custody would cut against his principle argument against the validity of the immigration detainer. Second, as

4

the grievance examiner explained, Plaintiff was denied minimum custody status because a Federal immigration detainer had been filed against him and Plaintiff presents no persuasive argument which challenges the legality of denying minimum custody status when a Federal immigration detainer has been filed. Third, the immigration detainer was issued by the Department of Homeland Security from a base office in Charlotte, North Carolina, and it merely notifies DPS of Homeland Security's intention to take custody of the Plaintiff, whom they classify as a deportable alien, upon his release from State custody. (Id., Doc. No. 1-3). The immigration detainer cites Title 8, Section 287 of the Code of Federal Regulations as the authority for issuing the detainer. However, there does not be appear to anything in the Code of Federal Regulations, or in this immigration detainer, which would require a State official to in fact detain an individual once he or she is otherwise subject to release from state custody. See Galarza v. Szalczyk, 745 F.3d 634, 640 (3d Cir. 2014) (examining 8 C.F.R. § 287.7 and noting that "[a]ll Courts of Appeals to have commented on the character of ICE detainers refer to them as requests or a part of an informal procedure.") (internal quotation omitted); see also id. at 541 (citing, among other Circuit cases, United States v. Uribe-Rios, 558 F.3d 347, 350 n.1 (4th Cir. 2009) ("A detainer is a mechanism by which federal immigration authorities may request that another law enforcement agency temporarily detain an alien 'in order to permit assumption of custody by the Department [of Homeland Security].'") (citing 8 C.F.R. § 287.7(d)). There is no indication from the record before this Court that any of the named-defendants have an expressed an unequivocal intention to delay Plaintiff's timely release based on the immigration detainer therefore injunctive relief would be inappropriate on the conclusory allegations in Plaintiff's complaint.

Finally, Plaintiff does not deny that there has been an immigration detainer filed with the DPS by Homeland Security, instead he merely objects to the method and practice of detainment (and DPS' alleged role in the process), but this a responsibility that is expressly delegated to Homeland Security. See Lopez v. Gonzales, 549 U.S. 47, 52 n.1 (2006) (noting that the INS's immigration enforcement has been delegated to the Bureau of Immigration and Customs Enforcement which is within the Department of Homeland Security) (citing Clark v. Martinez, 543 U.S. 371, 375 n.1 (2005)). Furthermore, despite Plaintiff's apparent belief that DPS will in fact detain him beyond his scheduled release date based on the strength of the detainer, the Code of Federal Regulations provides, importantly, that the actual purpose of an immigration detainer is simply to notify a law enforcement agency that has custody of an individual that Homeland Security believes is a removable alien and to inform the law enforcement agency that the Department will seek custody of the alien "for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a).

For the reasons stated herein, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted against these defendants and his complaint will therefore be dismissed.

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice. (Doc. No. 1).

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel is **DENIED**. (Doc. No. 3).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: July 3, 2014

Frank D. Whitney
Chief United States District Judge